UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/23/2026

IN RE APPLICATION OF JEAN PAUL
PELLETIER DIAZ

**REPORT AND
RECOMMENDATION**

25-MC-601 (JHR) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To The Honorable Jennifer H. Rearden, United States District Judge:**

Jean Paul Pelletier Diaz ("Jean Paul" or "Applicant") has filed an application
to obtain discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782.  ECF
No. 1 (the "Application").  This matter was referred to the undersigned for a Report
and Recommendation on January 6, 2026.  ECF No. 7.  For the reasons described
below, the undersigned respectfully **RECOMMENDS** that that Application be
**GRANTED**.

## I.    Background

Jean Paul is the son of Constancia Diaz Estrada ("Mother"), who died on
January 18, 2024.  Declaration of Alejandro Garcia-Villalpando dated December 29,
2025, ECF No. 3 ("First Garcia-Villalpando Decl.") ¶ 2.  He is a party in a probate
proceeding in Mexico pertaining to his Mother's estate, Case No. 775/24, which is
pending in the Superior Court of Justice of Mexico City, Eleventh Family Court (the
"Mexican Proceeding").  *Id.* ¶¶ 3, 5.  Jean Paul's sister, Tancy Annette Pelletier Diaz
("Tancy"), was appointed joint executrix of Mother's estate along with Maria

1

Cristina Perez Escamilla ("Maria"). *Id.* ¶ 4. Jean Paul and Tancy are the only heirs and beneficiaries of Mother's estate. *Id.* ¶ 6.

Jean Paul contends that Mother's estate includes bank accounts held in the following names: (1) Solid Investments, LLC, (2) Abacus Partners, Quebec, (3) Overfund Drive I, LLC, (4) Satellite Capital LLC, and (5) Xenon Capital LLC. *Id.* ¶ 7. Through this Application, Jean Paul seeks authorization to serve subpoenas on JPMorgan Chase & Co. ("JPMorgan") and Morgan Stanley (together, "Respondents") to obtain records concerning accounts held by the five entities listed above, as well as any related accounts over which Mother or Tancy has signing authority (hereafter, the "Bank Accounts"). *Id.* ¶ 7; Supplemental Memorandum of Law, ECF No. 12 ("Suppl. Memo.") at 5[1] (clarifying which legal entities are to be served with subpoenas).

On February 18, 2025, Jean Paul filed an application in the Mexican Proceeding to be appointed as executor and to remove Tancy and Maria from their positions (the "Removal Application"). Supplemental Declaration of Alejandro Garcia-Villalpando dated January 23, 2026, ECF No. 11 ("Second Garcia-Villalpando Decl.") ¶ 9.[2] This application remains pending. *Id.* ¶ 13. One of the asserted grounds for the Removal Application is that Tancy and Maria failed to make required submissions listing Mother's assets. *Id.* ¶¶ 9–11. Thus, Jean Paul wishes to present records pertaining to the Bank Accounts as evidence in the

---

[1] Page numbers reflect the ECF-generated pagination.

[2] In August 2025, Tancy advised the Mexican court that Maria had passed away. Second Garcia-Villalpando Decl. ¶ 12.

Mexican Proceeding.  He claims these records are essential evidence for both the pending Removal Application and for further rulings concerning whether the Bank Accounts are part of Mother's estate and, if so, whether Tancy made improper withdrawals from the Bank Accounts.  *Id.* ¶ 15.

## II.    Discussion

28 U.S.C. § 1782 authorizes interested persons to obtain discovery under the Federal Rules of Civil Procedure for use in a foreign proceeding.  Courts considering applications under Section 1782 should be guided by the "twin aims" of this statute, which are providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.  *See In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

An applicant for discovery under Section 1782 must satisfy the following three statutory requirements:

> (1) the person from whom discovery is sought "resides or is found" in the district of the district court to which the application is made,
>
> (2) the discovery is "for use in a proceeding in a foreign or international tribunal," and
>
> (3) the application is made "by a foreign or international tribunal or upon the application of any interested person."

28 U.S.C. § 1782(a).  Even if these three statutory requirements are met, a district court has considerable discretion in deciding whether to grant an application under Section 1782.  The Supreme Court has provided four factors to be considered in the exercise of this discretion:

3

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"

(3) whether the Section 1782 petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and

(4) whether the discovery sought is "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264–65 (2004) (citations omitted).

### A.    Statutory Requirements Under Section 1782

The first of the three statutory requirements for a Section 1782 application is that the person from whom discovery is sought resides or is "found" in the district where the application is made.  As the Second Circuit has explained, "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process."  *In re Del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).  In other words, the person from whom discovery is sought must be subject to personal jurisdiction within this District.

In analyzing the Constitutional limitations on the exercise of personal jurisdiction, the Supreme Court has "distinguished between specific or case-linked jurisdiction and general or all-purpose jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citations omitted).  Specific jurisdiction requires the suit to arise out of or relate to defendant's contacts with the forum.  *See Goodyear Dunlop*

4

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In contrast, general jurisdiction allows a court to hear "any and all claims" against a defendant.  *BNSF*, 581 U.S. at 413.  As described below, the Application sufficiently alleges that JPMorgan and Morgan Stanley, the Respondents from which discovery is sought, are subject to both general jurisdiction and specific jurisdiction.

General jurisdiction over corporations is consistent with due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted).  The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business.  *Id.* at 118.  Jean Paul has submitted evidence that JPMorgan is a Delaware corporation with its principal place of business at 383 Madison Avenue, New York, New York 10179.  Suppl. Memo. at 6 (citing Second Garcia-Villalpando Decl. Exs. A and B).  Similarly, Jean Paul has submitted evidence that Morgan Stanley is a Delaware corporation with its principal place of business at 1585 Broadway, New York, New York 10036.  Suppl. Memo. at 7 (citing Second Garcia-Villalpando Decl. Exs. C and D).  Thus, Applicant has shown that JPMorgan and Morgan Stanley are both subject to general personal jurisdiction in this District.

In contrast to general jurisdiction, which allows a court to hear any dispute involving the party before the court, the exercise of specific jurisdiction requires that "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum

5

State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) (quoting *Goodyear*, 564 U.S. at 919). While most decisions addressing specific jurisdiction arise in the context of determining whether a court can exercise personal jurisdiction over a defendant for purposes of imposing liability, the Second Circuit has explained how this concept applies in the context of a Section 1782 application:

> Translated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.

*In re Del Valle Ruiz*, 939 F.3d at 530.

The Application seeks certain records pertaining to the Bank Accounts at J.P. Morgan Private Bank, a business unit operated by JPMorgan, and Morgan Stanley Private Wealth Management, a business unit operated by Morgan Stanley. Second Garcia-Villalpando Decl. ¶ 7. Jean Paul claims that records for the Bank Accounts are maintained at the offices of J.P. Morgan Private Bank, which are located at 390 Madison Avenue, New York, New York 10017, and at the offices of Morgan Stanley Private Wealth Management, which are located at 1585 Broadway, New York, New York 10036. *Id.* Accordingly, there is a nexus between Respondents' forum contacts (*i.e.*, their provision of private banking or private wealth management services in

6

this District) and the materials sought through the Application (*i.e.*, records created in the course of providing these services within this District). This satisfies the Second Circuit's requirement that the discovery material sought must "proximately result[] from respondent's forum contacts," and provides a sufficient basis to conclude that JPMorgan and Morgan Stanley are subject to specific personal jurisdiction in this District for purposes of the Application. *In re Del Valle Ruiz*, 939 F.3d at 530

Turning to the second requirement of Section 1782, Applicant states that the requested discovery is "for use" in a proceeding before a foreign tribunal because the records he seeks would allow him to present evidence in the Mexican Proceeding regarding whether the Bank Accounts are properly considered part of Mother's estate and, if so, whether Tancy made improper withdrawals from such accounts. Second Garcia-Villalpando Decl. ¶¶ 9–15. Jean Paul contends that these records would support his Removal Application and could support future rulings on the proper disposition of any funds Tancy may have withdrawn from the Bank Accounts. *Id.* ¶ 15. This showing is sufficient to satisfy the second requirement of Section 1782. *See Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) ("We therefore hold that Mees has satisfied § 1782's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below.").

As to the third requirement, Jean Paul is a party in the Mexican Proceeding, and is therefore an "interested person" who may invoke Section 1782. First Garcia-

7

Villalpando Decl. ¶ 5; *Intel*, 542 U.S. at 256.  Thus, all three requirements of 28 U.S.C. § 1782 are satisfied.

### B.    The *Intel* Factors

Even where the three statutory requirements set forth in Section 1782 are met, a court is not obligated to provide discovery, but must exercise discretion to determine whether to grant the requested discovery guided by the four factors provided in *Intel*.

Turning to the first *Intel* factor, the Respondents are not parties to the Mexican Proceeding.  Suppl. Memo. at 4 n.2.  This weighs in favor of granting the Application.

Second, given the nature of the foreign tribunal (a Mexican family court) and the character of the proceeding underway (a probate proceeding to determine and distribute the assets of Mother's estate), there is no apparent reason to believe that the court presiding over the Mexican Proceeding would be unreceptive to this discovery.  Petitioner's Memorandum, ECF No. 2 ("Memo.") at 7.

Third, there is no indication that the Application constitutes an effort to circumvent foreign proof-gathering restrictions or other policies of either Mexico or the United States.  Memo. at 7–8.

Fourth, Applicant seeks a defined set of records for a handful of accounts. *See* ECF No. 1-2 (form of subpoena seeking, *e.g.*, account opening documents, organizational documents for the account holders, signature cards and periodic statements starting on December 1, 2023).  Further, Applicant claims that Respondents "have indicated a willingness to provide these records in response to a

subpoena." Memo. at 8.[3]  Accordingly, the requested discovery is not unduly burdensome.

The Application makes a sufficient showing on the four *Intel* factors to authorize the service of subpoenas for records pertaining to the Bank Accounts.

## III.    Conclusion

Because Applicant has satisfied the statutory requirements as well as the *Intel* factors, the undersigned respectfully **RECOMMENDS** that the Application be **GRANTED**.

**PROCEDURE FOR FILING OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jennifer H. Rearden, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rearden.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

---

[3] Respondents will have an opportunity to object to the subpoenas if these statements about the burden turn out to be untrue.

Dated: March 23, 2026
     New York, New York

Henry J. Ricardo
United States Magistrate Judge